UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JUAN DORADO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 05 C 5627 |
| | ) | |
| THE DIAL CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the court on Defendant The Dial Corporation ("Dial")'s motion for summary judgment pursuant to Fed. R. Civ. P. 56. For the reasons set forth below, Dial's motion is granted.

## BACKGROUND

Local Rule 56.1 requires a party opposing a motion for summary judgment to submit a response to each numbered paragraph of the moving party's statement of material facts, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon. In this case, Plaintiff Juan Dorado ("Dorado") has not responded to Dial's statement of material facts in conformance with the local rule. Dorado has denied groups of

paragraphs "in part" without specifying which facts he intends to admit or deny. Further, Dorado does not support the majority of his denials with evidence from the record but instead with unsubstantiated and conclusory argument. In assembling the factual recitation that follows, we have disregarded any alleged facts or purported denials that are unsupported by the record. *See Brasic v. Heinemann's Inc*., 121 F.3d 281, 284 (7th Cir. 1997).

Dial owns and operates a soap manufacturing facility, commonly referred to as the "Aurora plant," in Montgomery, Illinois. Plaintiff Juan Dorado ("Dorado") was born in Mexico on July 11, 1947, and currently resides in Aurora, Illinois. Dorado worked for Dial from July 16, 1984, until August 12, 2002. Throughout his employment, Dorado was a member of the Aurora plant's union and served as a union steward from 1988 until 1998.

Dial maintains a "No Harassment Policy" that prohibits "slurs, jokes, and other uninvited verbal, graphic or physical conduct by one individual towards another." The No Harassment Policy also provides that complaints will be investigated discreetly and that violations of the policy may result in disciplinary action, up to and including termination. Dorado was aware of Dial's anti-harassment policy and understood that violations of Dial's anti-harassment policy could result in termination. Dial also maintains plant rules (the "Plant Rules") that Dial managers

could refer to as a guide for determining discipline. The Plant Rules define "Major Infractions" as "morally or socially unacceptable behavior," including harassment of other employees, and provide that violations of "Major Infractions" "will subject employees to disciplinary action up to and including permanent separation" from Dial. Dorado was familiar with the Plant Rules and, while serving as a union steward, advised employees on how the rules worked.

On November 27, 2001, Dial suspended Dorado indefinitely because he violated Dial's expense reimbursement policy and falsified company records. The union filed a grievance challenging Dorado's suspension. Following grievance meetings with the union, Dial agreed to return Dorado to work on January 3, 2002, pursuant to a final warning status ("Last Chance Agreement"). Dorado understood the terms of his Last Chance Agreement, which included a provision that "any violation of Plant Rules in the "Major" or "Serious Infractions" area in the next 12 months may result in "immediate termination of [Dorado's] employment."

On July 31, 2002, Sharron Wilson, then a union grievance committee member, approached Dial's then Employee Relations Manager, Jeanne Keach, and informed her that a fellow employee had confided in her that she was being sexually harassed by Dorado. Keach investigated these complaints, and learned of an additional woman's complaints concerning Dorado's allegedly harassing conduct.

On August 12, 2002, Keach met with Dorado and a union steward to discuss the allegations against him, which included complaints concerning his kissing women's hands, touching a female employee in her hip area, and making inappropriate comments to female employees. Dorado denied the allegations, and Keach informed him that Dial was suspending his employment pending the completion of her investigation. Based on the results of her investigation, Keach found that the allegations against Dorado were credible and that his conduct violated his Last Chance Agreement. She recommended that Dial terminate his employment, a recommendation that was approved by the manager of human resources and the Aurora plant manager. In reaching its decision to terminate Dorado's employment, Keach was also aware that discovery in a pending pattern and practice sexual harassment case against Dial revealed a number of allegations regarding Dorado that, if true, constituted additional violations of Dial's No Harassment Policy. On August 14, 2002, Dial advised him that it was terminating his employment because of his inappropriate behavior in the workplace and because, by engaging in such behavior, he had violated his Last Chance Agreement.

On June 30, 2005, the Equal Employment Opportunity Commission issued Dorado a Notice of Right to Sue. On September 29, 2005, he filed suit against Dial, claiming that he was discriminated against because of his age, race, and national

origin, and that the termination of his employment violated the Age Discrimination Employment Act, 42 U.S.C. § 1981, and Title VII. Dorado contends that he was treated more severely than other younger, white employees who were also accused of sexual harassment. Further, Dorado maintains that Dial wrongly accused him of harassment.

Dial now moves for summary judgment in its favor on the entirety of the complaint. In addition, Dial seeks an award of attorneys' fees and costs pursuant to section 706(k) of Title VII, 42 U.S.C. § 2000e-5(k), and 28 U.S.C. § 1927. Dorado has not responded to Dial's motion other than to submit a one-page response in which he states either "admit," "deny," or "cannot admit or deny" to each paragraph of Dial's motion for summary judgment.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party must identify the specific portions of the total record which it believes establishes the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). This initial burden may be satisfied by presenting specific evidence on a particular issue or by

pointing out "an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party to show through specific evidence that a genuine issue of fact remains on issues on which the nonmovant bears the burden of proof at trial. *Id*. A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986); *Encelia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bedlamer v. Canes Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the court must construe all facts in a light most favorable to the nonmoving party as well as view all reasonable inferences in that party's favor. *Anderson*, 477 U.S. at 255.

## DISCUSSION

Dorado, a 60 year old man of Mexican origin, alleges that he was terminated in violation of the AREA on account of his age (55 at the time of his termination), in violation of Title VII on account of his color, race, and national origin, and in violation of 42 U.S.C. § 1981 on account of his race. Under the AREA, employers are precluded from "discriminating against any individual with respect to [his] compensation, terms, conditions, or privileges of employment because of such individual's age..." 29 U.S.C. § 623(a)(1). Title VII forbids an employer covered

under the Civil Rights Act "to fail or refuse to hire or to discharge any individual...because of such individual's race, color, religion, sex or national origin." 42 U.S.C. §2000e-2(a)(1). Section 1981 prohibits racial discrimination in the making and enforcing of contracts. 42 U.S.C. §1981. Section 1981 does not apply to discrimination based upon national origin. *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 756 (7th Cir. 2006). At this time, we need not settle the question of whether Dorado is claiming racial or national origin discrimination, as the standards for establishing a claim of discriminatory discharge in the employment context are the same under all three statutes. *See Ptasznik v. St. Joseph Hospital*, 464 F.3d 691, 695 (7th Cir. 2006).

A plaintiff claiming discharge in violation of the AREA, Title VII, or § 1981 may establish a case of employment discrimination through direct or indirect evidence. *Id.* Dorado does not set forth any direct evidence of discrimination. Therefore, under the indirect method first established in *McDonnell Douglas*, he must meet the initial burden of establishing a prima facie case of discriminatory discharge. *Id.* at 696 (*citing McDonnell Douglas v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973)). To do so, he must show that (1) he is a member of a protected class, (2) he was meeting his employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) he was treated less favorably than a similarly situated

person not within the protected class. *Id.* Once Dial articulates a legitimate, nondiscriminatory reason for termination, the burden shifts back to Dorado to prove that the stated reason for his termination is pretextual. *Id.* To prove that Dial's explanation is mere pretext, Dorado must show that the explanation is "a dishonest explanation, a lie rather than an oddity or an error." *Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 685 (7th Cir. 2000). An employer's mistaken belief that the plaintiff's conduct merited termination is not unlawful, so long as the belief was honestly held. *Ptasnik*, 464 F.3d at 696.

For the purposes of summary judgment, Dial does not contest that Dorado is a member of a protected class, was meeting its legitimate work expectations or suffered an adverse employment action. Dial argues only that summary judgment is appropriate because Dorado has not established his prima facie case with respect to the fourth prong; he has not produced sufficient evidence from which a factfinder could reasonably conclude that he was treated less favorably than similarly situated employees. Further, Dial argues that Dorado's suit is so frivolous that Dial should be awarded its attorneys' fees and costs incurred in litigating this action.

I. Prima Facie Case of Discriminatory Discharge

As an initial matter, Dorado has not satisfied his burden of production with respect to the existence of admissible evidence concerning similarly situated

employees. Any evidence relied upon at summary judgment must be competent evidence of a type otherwise admissible at trial and a party may not rely upon inadmissible hearsay in a deposition to oppose a motion for summary judgment. *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996). In his deposition, Dorado mentions several employees whom he contends were accused of harassment but treated more favorably: Steve Wallis, Steve Perkins, Richard Oost, Walter Jackson, James Kellet, Jr., and Charlie Spooner. However, all of Dorado's information concerning those employees and their treatment comes from information either these employees told Dorado or from information Dorado heard from fellow employees concerning these named employees. This evidence is offered to prove the truth of the matters asserted and is inadmissible as hearsay. Fed. R. Evid. 801, 802; *Russell v. Acme-Evans Co.*, 51 F.3d 64, 68 (7th Cir. 1995).

Furthermore, none of Dorado's statements fall within the recognized hearsay exceptions provided by Fed. R. Evid. 801(d)(2)(D) or Fed. R. Evid. 807. Under Rule 801(d)(2)(D), a statement is not hearsay when offered against a defendant as statements by a defendant's agents or servants concerning a matter within the scope of the agency or employment. However, as the Seventh Circuit has held, "not everything that relates to one's job falls within the scope of one's agency or employment." *Williams v. Pharmacia, Inc.*, 137 F.3d 944, 950 (7th Cir. 1998). Thus,

where employees not involved in the allegedly discriminatory decisionmaking process voice their opinions concerning the outcome of decisions, such opinions are not within the scope of employment and are considered hearsay. *Id.* In this case, all of Dorado's knowledge of supposedly similarly situated individuals are based on the statements of other hourly employees who did not have decision making authority regarding Dorado's employment. In the absence of any evidence that might lay a foundation for the admissibility of these statements, we may disregard them as hearsay. *Stagman v. Ryan*, 176 F.3d 986, 997 (7th Cir. 1999). Nor can Dorado's claims be admitted under the hearsay exception of Fed. R. Evid. 807. Rule 807 allows admission of hearsay if five elements are satisfied: (1) circumstantial guarantees of trustworthiness; (2) materiality; (3) probative value; (4) the interests of justice; (5) notice. *Keri v. Board of Trustees of Purdue University*, 458 F.3d 620, 631 (7th Cir. 2006) (*citing United States v. Hall*, 165 F.3d 1095, 1110 (7th Cir. 1999)). Critical to the admission of a hearsay statement under 807 is a finding that the statement is trustworthy. *Id.* Here, Dorado propounded no discovery from Dial, provided no affidavits from other employees, and relies exclusively on comments made to him by co-workers. Dorado's claims lack the guarantees of trustworthiness that would permit them to be admitted in evidence, and he makes no attempt to show that this evidence could be readily replaced at trial by admissible evidence.

Therefore, this evidence is inadmissible to defeat Dial's summary judgment motion. *See Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997).

Notwithstanding the inadmissibility of the evidence concerning Dorado's purported similarly situated employees, it is clear that even his hearsay evidence fails to establish that any of the employees he mentions could be considered "similarly situated" to him. In determining whether or not an employee is similarly situated to the plaintiff, we "apply a 'common-sense' factual inquiry" to determine whether or not there are "enough common features between the individuals to allow a meaningful comparison." *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 405 (7th Cir. 2007). Normally, a showing that an employee is similarly situated entails a showing that "the two employees dealt with the same supervisor, were subject to the same standards, had similar performance histories, or had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Id*. at 404-05. In this case, Dorado has not proffered any evidence that he was subject to the same standards, or had similar performance histories, as any of the employees to whom he maintains he was similarly situated. Dial, on the other hand, has proffered evidence that Dorado, unlike any other employee he points to, was subject to the stricter standards of a Last Chance Agreement and was the subject of corroborated allegations of harassment. In this

situation, where a party has failed despite ample opportunity to obtain evidence establishing a prima facie case of discrimination, summary judgment is appropriate. *Baylie v. Federal Reserve Bank of Chicago*, 476 F.3d 522, 526 (7th Cir. 2007).

Finally, even if Dorado had established a prima facie case of discrimination, he has not proffered any evidence that Dial's reason for terminating him was pretextual. Dial has set forth uncontested evidence of the investigation that concluded with Dorado's termination. Particularly, Dial received complaints from two employees that Dorado had violated Dial's "No Harassment Policy." Keach interviewed the complainants and found them to be credible. Because of this assessment, the harassment allegations regarding Dorado discovered in pending litigation, and the terms of Dorado's Last Chance Agreement, both the human resources manager and the plant manager agreed with Keach's recommendation to terminate Dorado.

Dorado shoulders the burden of proving that these nondiscriminatory reasons were pretext. *Ptasnik*, 464 F.3d at 695. Because Dial asserts that Dorado was terminated not because of his age or national origin but because he committed Major Infractions in violation of his Last Chance Agreement, Dorado must identify some evidence "reasonably calling into question the honesty" of Dial's belief that Dorado harassed his co-workers and that this conduct merited termination. *Giannopoulous*

*v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 410 (7th Cir. 1997). Dorado has failed to do so. Dorado simply denies that he sexually harassed his co-workers, argues that the women were lying, and alleges that Dial did not conduct a thorough enough investigation. However, this is an insufficient rebuttal as "the overall correctness or desirability of the reasons proffered is not relevant." *Baron v. City of Highland Park*, 195 F.3d 333, 341 (7th Cir. 1999). There is no evidence in the record by which any reasonable jury could conclude that Dial did not discharge Dorado based upon an honest belief that Dorado had violated the terms and conditions of his Last Chance Agreement. Therefore, summary judgment is appropriate.

II.     Dial's Request for Attorneys' Fees and Costs

Dial requests that this Court order Dorado and his attorney to reimburse it for the attorneys' fees, costs, and expenses Dial has incurred in litigating this case as permitted by 42 U.S.C. § 2000e-5(k) and 28 U.S.C. § 1927. We will not address this issue in the absence of a detailed request for such attorneys' fees and costs.

**CONCLUSION**

For the reasons set forth above, summary judgment is granted to Dial on all counts of the complaint. Dial may submit a detailed request for attorneys' fees and

costs by April 23, 2007. Dorado may submit any objections, including objections to the propriety of awarding fees in this case, by April 30, 2007.

 

 

/s/ Charles P. Kocoras
Charles P. Kocoras
United States District Judge

Dated:   April 5, 2007